UNITED STATES, Appellee

v.

JESUS CONCEPCION-VELEZ, Private First Class,
U. S. Army, Appellant

4 USCMA 183, 15 CMR 183

No. 2634

Decided April 23, 1954

LT COL Edgar R. Minnich, U. S. Army, CAPT William C. Irby, Jr., U. S. Army, and 1ST LT Alexander J. Jemal, Jr., U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Ezra B. Jones, Jr., U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty by general court-martial of one specification alleging assault with intent to inflict grievous bodily harm and two specifications of simple assault, all in violation of Article 128, Uniform Code of Military Justice, 50 USC § 722. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for five years. The convening authority reduced the period of confinement to three years, but otherwise approved the findings and sentence, and the board of review affirmed. We granted accused's petition for review, limiting the scope of briefs and arguments to the issue of whether the court erred by considering, in closed session, a written psychiatric opinion as to accused's sanity.

On August 30, 1952, the accused was confined in a guardhouse at Fort Kobbe, Canal Zone. At about 8:00 a.m. on that date, Private First Class Cosgrove was performing his duty as desk noncommissioned officer. He received a report that the accused, who was in close confinement, had a military police club in his possession. Cosgrove and Corporal Johnson went to investigate. As they reached the door of the room in which accused was incarcerated, they saw him lying on his back, on the floor, wearing only his underwear. They called to him, but received no answer. As they entered the room, they observed that his socks were on his hands. When they had advanced to a point approximately five yards from him, he arose, seized a metal pipe about fourteen inches long concealed under his sport shirt, and swung at them. Cosgrove took the pipe away from the accused and the two guards started to leave. As they reached the door, the accused attempted to strike Johnson, but Johnson blocked the blow. The guards left and as the door closed the accused threw a trash can against it.

At about 12:30 a.m. on September 1, 1952, Sergeant Morales was by the charge of quarters' desk talking with the duty noncommissioned officer when the accused jumped on him. When he attempted to push the accused away, the latter swung at him with a knife, cutting Morales' left index finger. Surgery was required to repair the wound because a tendon had been severed. After the cutting, the accused ran upstairs, but was apprehended and taken to the dispensary. There he remained quiet for a short time and then he went into a frenzied rage. He was restrained by being placed in a strait jacket and tied to a litter. Morales, in describing the condition of the accused at the time of the cutting, stated he "didn't look like a man." Another witness described the accused as "acting too fast" and his eyes were "too open."

The theory of the defense was directed toward showing abnormal conduct on the part of the accused. Several witnesses testified concerning incidents when he had torn his clothes, thrown trays, and induced vomiting in the mess hall. One of these witnesses described the accused as having a violent temper and another stated that the

184

throwing of trays in the mess hall was preceded by an incident of hostility between the guard and the accused. Several reports of psychiatric examinations made of the accused in July 1951 were introduced in the evidence. Substantially, they go no further than to show that the medical examiner concluded the accused was emotionally unstable, and that his behavior was infantile, simple, and aggressive. In his own defense, accused testified that he could not remember any of the events which form the basis of the charges against him.

After the taking of testimony had been completed, and because of the nature of the defense, trial counsel inquired as to whether any one wished to make a motion for further inquiry into the sanity of the accused. He made the request so that he would be advised before the Government rested. Defense counsel affirmatively denied that he was so doing. However, he asserted the issue of sanity of the accused was before the court-martial on the general issue of guilt or innocence. When it appeared no one desired to raise the issue, trial counsel announced the prosecution had completed its presentation of evidence. After final arguments on the merits by trial and defense counsel, which included assertions of sanity and insanity, the president of the court inquired as to whether there had been a medical board proceeding and examination under Chapter 24, page 201, Manual for Courts-Martial, United States, 1951. Trial counsel stated that the question could not be answered. The president asked that the reason for the statement be explained. Trial counsel then stated, properly, that the Manual provided such a report could be used only to determine whether any inquiry was desired. The president replied that the court was considering the necessity of ordering a further hearing on accused's mental instability. A discussion then ensued as to whether the proper proceeding was to have the court-martial make further inquiry into the sanity of the accused, take further evidence, or rely on the evidence in the record. The law officer read aloud the procedure outlined in the Manual, and trial counsel then furnished him with the medical board report. After considering its contents, he denied a motion for any further inquiry, subject to objection by any member of the court-martial. An objection to the ruling was noted and the court requested it be permitted to rule on the necessity for further inquiry. The law officer then made the following statement:

"After the law officer examined the proceedings of a board of medical officers, dated 9 October 1952, concerning this accused, it was the ruling that no independent hearing to consider further inquiry into the mental condition of the accused should be made. This ruling of the law officer was subject to objection by any member of the court. The president of the court objected to such a ruling. It is therefore my duty to furnish the court, for the limited purpose of determining whether further inquiry into the mental condition of the accused should be made by the court, the copy of the original of report of proceedings of the board of medical officers, in compliance with the provisions of paragraph 122c, Manual for Courts-Martial, 1951, page 204. It will be passed to the president of the court and the court will be closed for their determination."

The procedure outlined by the law officer was objected to by defense counsel, but his objection was overruled. Prior to closing the court-martial to permit the members to consider the report, the law officer admonished the members in the following language:

"Then prior to closing the court for determination, the court is further advised that these proceedings are only for the limited purpose of determining whether further inquiry into the mental condition of the accused should be made at this time, and does not constitute evidence whatsoever as to the guilt or innocence of the accused."

When the court reopened, the president announced the court had determined that further inquiry into the

mental condition of the accused was not necessary.

Appellate defense counsel contend that since insanity of the accused was raised as a general issue and not as an interlocutory question, consideration by the court-martial members of the medical board report was error which prejudicially affected the accused. However, we believe that contention is based upon a misconstruction of the purpose for which this report was examined by the court-martial members and, in addition, it fails to recognize the broad informal manner in which the question of further inquiry into sanity may be raised and determined.

Paragraph 122b, Manual for Courts-Martial, United States, 1951, discusses the procedure to be followed in considering insanity. It provides that the issue of insanity may be raised at any time while the case is before the court. In addition, it prescribes that a request, suggestion, or motion that there be an inquiry into accused's sanity may be made by any member of the court, prosecution or defense. If any request or motion is made, the law officer rules upon either, subject to any objection by members of the court-martial. Assuming an objection, the final determination of the question is placed upon the court-martial members. The evidence necessary to make the preliminary determination on whether to proceed with an inquiry need not meet the tests of admissibility required of evidence admitted on the merits. The party desiring to have the matter pursued may be prompted to move for an inquiry because of the appearance of the accused, statements of witnesses, medical reports, conclusions of medical officers, rumors, or any other reason of sufficient importance to convince him that the question of sanity should not be overlooked. A provision which permits that informality in developing defenses is primarily directed toward affording maximum protection to an accused. He is presumed sane and he must carry the laboring oar to produce some substantial evidence of insanity. The Manual procedure may permit some

evidence tending to show sanity which might be found wanting if tested in the scales of evidentiary admissibility on guilt or innocence to come before the court on the interlocutory matter, but it affords an accused an effective, easy, and expeditious method of developing a possible defense without subjecting him to any substantial chance of prejudice. It would be most difficult to give an accused the benefits afforded by that type of proceedings without resorting to some informality and without subjecting him to some possible risk. The framers of the Manual had an appreciation of the problem and so they provided that any evidence used on the preliminary inquiry must be limited to the particular question then being considered. Paragraph 122c of the Manual, supra, provides:

"So much of the report of a board of medical officers or any other medical record as pertains to entries of facts or events which are properly admissible under the official records or business entry exceptions to the hearsay rule (144b, c) may be received in evidence. The opinions as to the mental condition of the accused contained in such a report are not within these exceptions to the hearsay rule. They may be received in evidence by stipulation, and in a proper case, as memoranda of past recollections recorded (146a). Such a report or any other pertinent matter, although not necessarily admissible in evidence, may nevertheless be examined by the law officer of a general court-martial or the president of a special court-martial for the limited purpose of determining whether further inquiry into the mental condition of the accused should be made by the court; and, in the event a ruling is objected to by any member, *the court may also examine the document for the same limited purpose.*"

In the case at bar, the report of the board of officers, which was scanned by the court-martial members, referred to the accused's past bizarre behavior, but the officers joining in the report concluded that he was legally sane. It is argued strenuously by counsel for accused that the conclusion was improp-

erly before the court-martial; that once the finding was made known to the members, it would influence their belief on the guilt of the accused; and that evidence on the merits which was admitted, contrary to well recognized rules of evidence, was considered by the court-martial. It may be that once seen, the conclusions of the reporting officers could not be erased from the minds of the court members, but to accept that principle would cast aside another well accepted rule of law to the effect that the court-martial members are presumed to follow the commands of the law officer. We are not willing to apply the first mentioned principle to cases of this type. There are certain instances when evidence is of such an inflammatory nature that its effect could not be cured by a cautionary instruction, but this clearly is not in that category. It can hardly be considered as evidence which would arouse resentment, fury, or indignation in the minds of the court-martial members. An accused is presumed to be sane and this evidence does no more than support that presumption even though it may tend to discredit any claim of insanity.

Placed in its proper perspective, the Manual procedure is not unfair to an accused. He is, until there is evidence to the contrary, clothed with the presumption of sanity. He can raise his lack of mental capacity as an issue; but, if he fails to do so, anyone connected with the trial may suggest that an inquiry be made to ascertain the desirability of raising it for him. However, the probability of the question being considered is rendered extremely remote if the party seeking to protect an accused must depend on testimony which is limited by the rules of evidence. Any inquiry initiated cannot prejudice the accused if evidence of insanity is obtained, and it can only be detrimental to him in a very restricted sense if evidence of sanity is produced. In the former instance a possible defense is developed. In the latter instance, the evidence cannot be used to support a finding.

The vice of the Manual procedure, if any, is that if the court-martial was to consider the evidence on the merits

the accused might be denied his right of cross-examination. However, assuming arguendo that in spite of the instruction not to consider the report on the guilt or innocence of the accused, there might be some probability that the findings of the board would linger in the minds of the court-martial members, the accused is not entirely without remedy. He can, if he desires to develop the subject on the merits, request that the members of the board be called as witnesses and examined on the results of their examination. This method may not be satisfactory to an accused, but the evidence could be introduced by the Government on the question of guilt or innocence and the procedure affords the accused the same right he would be entitled to if that procedure had been adopted. The Government does not proceed unfairly by not producing the evidence unless it is favorable to the accused. Paragraph 122b, page 203, Manual for Courts-Martial, United States, 1951, provides as follows:

"If the issue of insanity is raised as an interlocutory question and the court finds the accused sane, the defense is not precluded by this finding from offering further evidence on the issue of insanity and, when all the evidence in the case has been received, the court may proceed to its findings on the guilt or innocence of the accused. In consideration of its findings upon the general issue, if the court entertains a reasonable doubt that the accused was mentally responsible for his acts, it will enter findings of not guilty as to the proper charges and specifications (120b)."

Perhaps the manner of use in this case will illustrate the necessity for this type of proceedings. It is very doubtful that insanity was raised as an issue. However, there had been introduced into evidence the testimony of lay witnesses which indicated that some behavior and personality disorders were influencing the actions of the accused. They were not indicia of legal insanity but they portrayed the accused as having an anti-social complex. The court members expressed some concern as to

whether the conduct of the accused was brought about by a mental disorder, and they were apparently interested in determining whether further inquiry should be made. The taking of additional evidence might be necessary if the Government had evidence of experts which might cast some light on the question, and the most satisfactory method of proceeding was to determine whether the psychiatric examination provided for in the Manual had been given; and, if so, what it established about accused's mental condition. If not, then the court-martial could request that one be made. When it developed that a board of medical officers had recently examined the accused, the court-martial called for the report. It was thus made apparent to them that the taking of further evidence would not assist the accused. Had the report indicated some form of insanity, the court-martial or the accused could have called the witnesses. However, it did not, and no suggestion was made that other evidence was available. For that reason, the court-martial found further inquiry unnecessary. Obviously, at the time the court-martial requested production of their report, the members were unaware of its contents and it could have been favorable or unfavorable to the accused. However, when it appeared that the board of officers had concluded the accused was sane, they found no good reason to be further concerned about developing the defense. The decision they made was controlling only on the interlocutory question and, being limited to that purpose by positive direction, we conclude the evidence did not influence the findings of guilt.

We have developed the subject in some detail, but not without justification. While the Manual for Courts-Martial, United States, 1951, expressly authorizes the procedure here adopted, we need not follow its provisions if they deny to the accused a fundamental right accorded him by the Code. In view of the fact that Article 51, 50 USC § 626, gives the court-martial members the right to overturn the law officer's ruling on insanity, when presented as an interlocutory matter, it becomes necessary to allow an informal proceeding so long as the evidence on the collateral question is disassociated from that controlling on the merits. The framers of the Manual authorized an informal inquiry provided it was hemmed in by appropriate instructions to prevent any use of the evidence on the question of guilt and innocence. In the case at bar, the law officer quite properly reiterated his command that the evidence heard on the preliminary question must not be considered on the merits. We must assume that the court-martial members followed the command.

The decision of the board of review is affirmed.

BROSMAN, Judge (concurring):

On the merits here, I find difficulty in seeing how the accused could have been prejudiced by the procedure employed—this for the reason that I do not believe that he succeeded at any time in raising the issue of sanity. Since the court-martial is *bound* to presume sanity—absent evidence reasonably raising the converse—how then could the appellant have been harmed in a legal sense even by incompetent evidence indicating that he was sane?

However, the procedure employed seems to me to have been entirely correct. It is specifically authorized by the Manual—and the law officer's instructions carefully limited the medical report's admissibility to its proper sphere of utility. The court-martial's consideration of this paper on the interlocutory issue really constituted a measure designed to assure—before any question of convicting him was reached—that the accused's sanity had been the subject of inquiry by experts. Admittedly, the procedure may possibly be perverted so as to place evidence before court-martial members for an improper purpose. However, the risk of perversion seems insufficient to me to justify invalidating the explicit Manual provision.

It is to be noted that, under the 1949 Manual's paragraph 112c, the sanity report of a board of medical officers, convened in accordance with Manual provisions, was admissible without limitation, "provided the officers making such

188

report are made available for call as witnesses by the prosecution, defense, or the court for examination." I am inclined to believe that, if the present qualified Manual provision in some fashion contravenes the Uniform Code, then the broader one found in the 1949 Manual must have violated the Articles of War. Had this been the case, Congress would doubtless have indicated a wish wholly to reject the use of such reports. In any event, the practice under the last-mentioned legal source suggests that the consideration of such a report has not generally been deemed to inflame and prejudice a court-martial in its determination of the mental condition of an accused.

QUINN, Chief Judge (dissenting):

I dissent.

Any fair appraisal of the record of trial in this case impels the conclusion that the issue of sanity was fairly raised by the evidence. Thus, rules other than those discussed in the majority opinion, apply to the problem which confronts us. During the course of cross-examination of the prosecution witnesses, the defense counsel elicited descriptions of the accused's bizarre behavior at the time of the acts charged. At the close of the prosecution's case, the trial counsel suggested the possibility that the defense was trying to raise the issue of mental responsibility of the accused and requested a determination of whether anyone desired to present a motion for further inquiry into the accused's sanity. The defense counsel then presented such a motion and it was denied by the law officer, with the observation that "The court will consider the sanity issue as a matter pertaining to the general issue upon deciding the question of guilty [sic] or innocence of the accused." At this point in the trial, the evidence did not fairly raise the issue of insanity. Nor can it be said that the law officer's ruling on the motion for further inquiry was unsupported by the record. However, following this action, the defense showed that more than a year prior to the date of the offenses charged, the accused was hospitalized in Korea for "Disassociative reaction manifested by disturbed behavior." Because of this condition, he was considered unqualified for combat duty and relieved from his assignment. A succession of defense witnesses then supplied other evidence of the accused's condition, all tending to show a behavior pattern indicating insanity. However, neither the prosecution nor the defense presented any expert testimony on the subject. The defense counsel removed all doubt concerning his purpose in offering this testimony by declaring in his final argument that the defense was predicated upon the lack of mental responsibility. Questioned further by the president of the court as to his purpose, counsel denied that he was raising insanity as an interlocutory question but insisted that he was relying upon it as a defense to the charge. The president then asked the law officer whether the question of sanity had been raised. This question was not answered directly by the latter who declared simply, "It may be decided by the court on the merits of the case." When it was suggested that the president's questions be interpreted as a motion for further inquiry, the president specifically denied this with the statement, "The court is going to call for evidence." Despite this clear statement of the court's purpose, the law officer construed the remarks of the president as a motion for further inquiry and denied it, reiterating his view, that "The court may proceed to determine it on the merits of the case." When this ruling was objected to, the exhibit in question was given to the members of the court for their consideration, over the strenuous objections of the accused. Needless to say, the contents of this exhibit effectively terminated all further questions on the subject and the court sustained the law officer's ruling. Thereafter, the law officer instructed the court as required by Article 51 (c), Uniform Code of Military Justice, 50 USC § 626. He included in these instructions advice as to the defense of insanity which was complete and comprehensive.

Under all the circumstances of this case, especially the many statements of the law officer to the effect that insanity could be considered upon the

general issue of guilt or innocence, that subject became the sole question to be determined by the court-martial. Since this is so, the provisions of paragraph 122c, Manual for Courts-Martial, United States, 1951, apply. Those provisions are as follows:

"The issue of the sanity of the accused is one of fact, and the modes of proof and rules of evidence with respect to this issue are, generally, those prescribed in Chapter XXVII.

.   .   .   .   .   .

"So much of the report of a board of medical officers or any other medical record as pertains to entries of facts or events which are properly admissible under the official records or business entry exceptions to the hearsay rule (144b, c) may be received in evidence. The opinions as to the mental condition of the accused contained in such a report are not within these exceptions to the hearsay rule."

The procedure followed in this case denied the accused the fundamental right to be confronted by the witnesses against him and to cross-examine all adverse witnesses. In my opinion, these errors are sufficiently serious to require reversal of the decision of the board of review.